UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY HARRISON #156814,

    Plaintiff,                              Hon. Robert J. Jonker

v.                                           Case No. 1:16-cv-336

BRYAN DEEREN, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment, (ECF No. 88), Defendants' Motion for Summary Judgment, (ECF No. 92), and Plaintiff's Motion for Partial Summary Judgment, (ECF No. 118). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be **granted**, Plaintiff's motion be **denied**, and this action **terminated**.

## BACKGROUND

In his complaint, Plaintiff alleges the following. Plaintiff suffers from Hirschsprung's disease, a "rare bowel defect."[1] Plaintiff experiences "constant severe pain [and] is completely unable to pre-determine when he is about to defecate or even stop the process when it occurs." Plaintiff was being treated for this disorder by Dr. William Schmuggerow.

On June 12, 2014, Dr. Iftiker Ahmad examined Plaintiff, at Dr. Schmuggerow's request, and determined that Plaintiff required a high fiber diet with no processed meat. Dietician Patricia Willard disregarded this instruction, however. On June 20, 2014, Dr. Schmuggerow issued

---

[1] Hirschsprung's disease is a congenital condition "that affects the large intestine (colon) and causes problems with passing stool." *See* Hirschsprung's Disease, available at https://www.mayoclinic.org/diseases-conditions/hirschsprung%27s-disease/symptoms-causes/syc-20351556 (last visited on February 20, 2018).

an instruction that Plaintiff was to receive a "no processed meat diet." This instruction was rescinded later that same day. When questioned about the matter, Medical Administrator Bryan Deeren informed Plaintiff that "the MDOC doesn't provide a no processed meat diet." Plaintiff later discussed the matter with Assistant Deputy Warden Scott Schooley who refused Plaintiff's request for assistance. Dr. Ahmad subsequently rescinded his special diet instruction at the urging of Willard, Schmuggerow, Deeren, and Schooley. Plaintiff further alleges that Corizon violated his rights by failing to have Plaintiff "completely examined by a Hirschsprung's disease specialist."

Plaintiff initiated this action against Ahmad, Willard, Schmuggerow, Deeren, and Schooley, as well as Corizon Medical Services and Aetna Insurance alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment and his First Amendment right to be free from unlawful retaliation. Plaintiff also alleged that Defendant Ahmad violated his right to due process under the Fourteenth Amendment. Plaintiff's claims against Defendants Aetna and Ahmad were subsequently dismissed. Defendants Willard, Schmuggerow, Deeren, Schooley, and Corizon now move for summary judgment and/or dismissal. Plaintiff has also moved for partial summary judgment on his Eighth Amendment claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify

specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The party with the burden of

3

proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.       Eighth Amendment**

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or

4

safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

### A.    Plaintiff's Medical Record and Treatment History

On January 2, 2014, Plaintiff was examined by Defendant Schmuggerow. (ECF No. 92-1 at PageID.763; ECF No. 95-1 at PageID.845-50). An examination revealed abdominal tenderness, but was otherwise unremarkable. (ECF No. 95-1 at PageID.845-50). The doctor prescribed medication and ordered an x-ray of Plaintiff's abdomen. (ECF No. 92-1 at PageID.763; ECF No. 95-1 at PageID.845-50). Plaintiff met with Defendant Schmuggerow on January 20, 2014,

to discuss the results of his abdominal x-ray.  (ECF No. 92-1 at PageID.763; ECF No. 95-1 at PageID.851).   The x-ray revealed the presence of "a nonspecific ileus," but "no definite obstructive process."  (ECF No. 92-1 at PageID.763; ECF No. 95-1 at PageID.851).   In response, the doctor prescribed Plaintiff psyllium powder and also instructed that Plaintiff be placed on a "high fiber diet." (ECF No. 92-1 at PageID.763; ECF No. 95-1 at PageID.861-63).

On February 3, 2014, Plaintiff reported to Defendant Schmuggerow that a high fiber diet "has helped a lot: pain much reduced, stools better, [and] feeling generally better."   (ECF No. 92-1 at PageID.763; ECF No. 95-1 at PageID.866-70).   The doctor renewed his instruction that Plaintiff receive a high fiber diet.   (ECF No. 92-1 at PageID.763; ECF No. 95-1 at PageID.866-70).

On February 5, 2014, Plaintiff met with Dietician, Defendant Willard.  (ECF No. 95-1 at PageID.877-78).   Willard noted that "the recommended diet" for someone experiencing Hirschsprung's disease was: (1) adequate fluid intake; (2) regular physical activity; and (3) a high fiber diet.  (ECF No. 95-1 at PageID.877).   Willard completed a Meal Choice Form indicating that Plaintiff was to receive the "healthy choice menu" from which he could select a "high fiber diet." (ECF No. 95-1 at PageID.877; ECF No. 100-1 at PageID.1217).   Defendant Willard concluded that these menu options afforded Plaintiff "more than adequate fiber to be termed a 'high-fiber diet.'" (ECF No. 92-1 at PageID.763).   Plaintiff became "angry" and insisted that he instead receive a "special diet."  (ECF No. 95-1 at PageID.877).   The following day, Plaintiff reported that the food from his "new diet" was causing him to experience stomach pains and bloating.  (ECF No. 95-1 at PageID.883).

On February 12, 2014, Plaintiff met with a nurse to complain about "the recent change in his diet detail."   (ECF No. 95-1 at PageID.885-86).   Plaintiff stated that he "can't eat processed food."  (ECF No. 95-1 at PageID.885).   Plaintiff alleged that previously he was provided food from

"a list of high fiber foods," but now just "has to eat what they give him." (ECF No. 95-1 at PageID.885). The results of a physical examination was unremarkable. (ECF No. 95-1 at PageID.885). The nurse also noted that "it appears [Plaintiff] has been eating off of the regular chow line for several years at least." (ECF No. 95-1 at PageID.885).

On February 24, 2014, Defendant Willard reiterated to Plaintiff that the "regular meal line" provided "more than adequate fiber to be termed a high fiber diet." (ECF No. 95-1 at PageID.892-94). With respect to the specialized high fiber diet Plaintiff alleged that he previously received, Willard noted:

> For the 2.5 weeks that [Plaintiff] received his "special" diet from [food service], it was discovered that the inmate diet cook was preparing food trays for [Plaintiff] that consisted of cheese burgers and baked chicken on the bone. His 'customized' meal trays were stopped on 2/5/14 , and the diet cooks were fired.
>
> On 2/11/14, it was discovered once again that [Plaintiff] was able to obtain additional customized food trays consisting of burgers and chicken. Custody again stopped these unauthorized food trays on 2/11/14.

(ECF No. 95-1 at PageID.894; ECF No. 89-5 at PageID.714).

Willard continued, observing:

> It is interesting to note that the customized foods that [Plaintiff] was receiving (burgers and chicken) and he insisted that were high fiber diet foods, are NOT at all high fiber foods. [Plaintiff] appears upset that he is no longer receiving meal trays that are customized by inmate diet cooks.

(ECF No. 95-1 at PageID.894).

Willard concluded that Plaintiff could continue to eat from the "regular menu" and "self-select high fiber" items. (ECF No. 95-1 at PageID.894; ECF No. 89-5 at PageID.713-14).

7

On March 3, 2014, Plaintiff was examined by Defendant Schmuggerow. (ECF No. 92-1 at PageID.763-64; ECF No. 95-1 at PageID.900-02). Plaintiff reported that he "had been feeling better, but. . .is no longer getting the high fiber diet he needs." (ECF No. 92-1 at PageID.763-64; ECF No. 95-1 at PageID.900). Plaintiff reported that he cannot eat milk or processed meat. (ECF No. 92-1 at PageID.763-64; ECF No. 95-1 at PageID.900). Plaintiff reported that there "is very little he can eat" from his current menu and "his pain has gotten worse." (ECF No. 92-1 at PageID.763-64; ECF No. 95-1 at PageID.900). Plaintiff was "very angry and agitated." (ECF No. 95-1 at PageID.900). The doctor indicated that he would discuss the matter with the dietician. (ECF No. 92-1 at PageID.763-64; ECF No. 95-1 at PageID.901).

Plaintiff continued to complain about the food he was being offered and was again informed that "the MDOC does NOT have a therapeutic high fiber diet" and that "ALL 'high fiber' diet recommendations are to be provided as a self-select from the regular menu." (ECF No. 95-1 at PageID.914-18). On March 11, 2014, Defendant Schmuggerow concluded that Plaintiff's request for a "special diet" was "unnecessary and inappropriate" because Plaintiff was "receiving a diet consistent with recommendations for his medical condition." (ECF No. 95-1 at PageID.919).

On March 13, 2014, Plaintiff met with a nurse to report that "he is not happy with the high fiber self select trays" he was receiving. (ECF No. 95-1 at PageID.921). Plaintiff asserted that "he is disabled and [prison officials] will be getting him what he wants when he files a lawsuit and [prison officials are] shaking in our boots." (ECF No. 95-1 at PageID.921). Despite Plaintiff's complaint that prison officials were "starving him to death," the nurse observed that Plaintiff's weight "is consistent today with his normal weight and his BMI is in the normal range demonstrating his ability to maintain his weight with diets currently provided." (ECF No. 95-1 at PageID.921).

On April 28, 2014, Plaintiff was examined by Defendant Schmuggerow. (ECF No. 92-1 at PageID.764; ECF No. 95-1 at PageID.939-45). Plaintiff reported that he was still experiencing "severe abdominal pains and wants a special 'no processed meat' diet." (ECF No. 92-1 at PageID.764; ECF No. 95-1 at PageID.943). The doctor agreed to speak with the dietician about Plaintiff's dietary request, but nevertheless "suspect[ed] this is an attempt [by Plaintiff] to get a more appealing diet." (ECF No. 95-1 at PageID.945). Defendant Schmuggerow submitted a request to have Plaintiff examined by a gastroenterologist. (ECF No. 95-1 at PageID.945). This request was subsequently approved. (ECF No. 95-1 at PageID.948-49).

On May 9, 2014, Defendant Willard completed a Nutritional Assessment concerning Plaintiff's repeated complaints regarding the food he was being served. (ECF No. 95-1 at PageID.955). Willard noted that Plaintiff "continues to report that his diagnosis does not allow him to consume 'processed' foods." (ECF No. 95-1 at PageID.955). Willard further noted, however, that "'processed' food was never an issue with [Plaintiff] prior to receiving his unauthorized & customized meal trays of burgers and baked chicken." (ECF No. 95-1 at PageID.955). Willard observed that Plaintiff exhibited "normal body weight" and "has a long history of non-compliance to recommendations related to his diagnosis." (ECF No. 95-1 at PageID.955). Specifically, Willard observed that Plaintiff's "store food consumption has consisted of refined, 'processed', high fat, spicy foods." (ECF No. 95-1 at PageID.955). Willard further noted that Plaintiff was "non-compliant regarding water intake and exercise." (ECF No. 95-1 at PageID.955). Defendant Willard concluded Plaintiff "has many food likes and dislikes, which he attempts to present as tolerances and intolerances, respectively." (ECF No. 95-1 at PageID.955). Accordingly, Willard determined that Plaintiff's nutritional needs would be satisfactorily met by the standard meal option which permitted him to select "high fiber" options. (ECF No. 95-1 at PageID.955).

On May 14, 2014, Plaintiff was examined by Dr. Ahmad, a gastroenterologist with experience treating patients with Hirschsprung's Disease. (ECF No. 89-4 at PageID.709; ECF No. 95-1 at PageID.808). Plaintiff reported experiencing abdominal pain, constipation, dark stools, and abdominal distention. (ECF No. 89-4 at PageID.709; ECF No. 95-1 at PageID.808). On June 12, 2014, Plaintiff participated in colonoscopy and endoscopy procedures performed by Dr. Ahmad. (ECF No. 89-4 at PageID.709; ECF No. 95-1 at PageID.801-04). These examinations revealed that Plaintiff was experiencing a "common" stomach infection for which he was prescribed antibiotics. (ECF No. 89-4 at PageID.709-10; ECF No. 92-1 at PageID.764; ECF No. 95-1 at PageID.1022-26, 1034-35). Plaintiff, however, refused treatment for this infection. (ECF No. 92-1 at PageID.765; ECF No. 95-1 at PageID.1043, 1045, 1061).

On June 16, 2014, Defendant Willard reported that Plaintiff's "self-select High Fiber diet continues to be appropriate." (ECF No. 95-1 at PageID.1021). On June 20, 2014, Defendant Schmuggerow responded to Plaintiff's request for a special diet by noting that "the gastroenterologist advised high fiber diet w/ no processed meats." (ECF No. 95-1 at PageID.1037). As a nurse subsequently discovered, however, there was a discrepancy between the version of Dr. Ahmad's treatment notes Plaintiff submitted in support of his request for a special diet and the version that was provided to MDOC officials. (ECF No. 92-1 at PageID.765; ECF No. 95-1 at PageID.1042, 1044). Specifically, the version of Dr. Ahmad's treatment notes Plaintiff submitted included a hand-written notion of "high fiber diet" and "no processed meats." (ECF No. 101-1 at PageID.1265). However, the copy of these treatment notes provided to MDOC officials and contained within Plaintiff's medical records contains no such annotation. (ECF No. 92-1 at PageID.765; ECF No. 95-1 at PageID.1044). Accordingly, Plaintiff's care providers decided to "hold" Plaintiff's request for a no processed meat diet "until further clarification" could be obtained from Dr. Ahmad. (ECF No. 95-1 at PageID.1042).

On June 25, 2014, Dr. Ahmad was contacted by a prison official requesting to know whether Plaintiff required a "special diet." (ECF No. 89-4 at PageID.709). The doctor responded that Plaintiff "may follow a normal diet, no need for any special dietary considerations or restrictions." (ECF No. 89-4 at PageID.709; ECF No. 95-1 at PageID.797).

On July 1, 2014, Plaintiff met Defendant Schmuggerow. (ECF No. 92-1 at PageID.765; ECF No. 95-1 at 1050-51). Defendant Willard, as well as an MDOC Housing Unit Manager, also attended this meeting. (ECF No. 92-1 at PageID.765; ECF No. 95-1 at 1050-51). When Defendant Schmuggerow showed Plaintiff the letter from Dr. Ahamd indicating that Plaintiff did not require a special diet, Plaintiff accused Schmuggerow, Willard, and the Housing Unit Manager of "conspiring to deny him appropriate medical care." (ECF No. 95-1 at 1050). Plaintiff became "quite agitated" and told Defendant Schmuggerow that he would sue him. (ECF No. 95-1 at 1050).

On July 19, 2014, Plaintiff requested that he be treated by a different doctor, stating, "I no longer want to be treated by Dr. Schmuggerow." (ECF No. 95-1 at PageID.1065). Plaintiff's request was denied because "inmates are not allowed to choose medical providers." (ECF No. 95-1 at PageID.1065). Defendant Deeren concluded that "this appears to be further attempts [by Plaintiff] at manipulating his diet circumstances by trying to now change providers." (ECF No. 95-1 at PageID.1066).

On August 8, 2014, Plaintiff met with Defendant Schmuggerow. (ECF No. 92-1 at PageID.765; ECF No. 95-1 at 1078-80). Plaintiff asserted that he was "still not getting a proper diet for his condition." (ECF No. 95-1 at 1078). Plaintiff also accused Schmuggerow of participating in a conspiracy to violate his rights and deny him appropriate medical treatment. (ECF No. 95-1 at 1078). When Plaintiff was reminded that Dr. Ahamd concluded that he did not require any special

11

diet, Plaintiff became "quite agitated, and walked out of the exam room before the interview could be completed or an exam done." (ECF No. 95-1 at 1078).

On October 8, 2014, Plaintiff reported that he was experiencing "difficulty swallowing and breathing with regurgitation at night." (ECF No. 95-1 at 1108). Plaintiff was examined by a nurse on October 10, 2014. (ECF No. 95-1 at 1109). The results of an examination were unremarkable. (ECF No. 95-1 at 1109). Plaintiff was provided over-the-counter medication and instructed to "contact healthcare if breathing difficulty worsens." (ECF No. 95-1 at 1109). On October 14, 2014, Defendant Schmuggerow submitted a request for Plaintiff to have a follow-up examination with a gastroenterologist. (ECF No. 92-1 at PageID.766; ECF No. 95-1 at 1112-14, 1116-17). This request was denied with instructions to instead prescribe Plaintiff a particular medication. (ECF No. 92-1 at PageID.766; ECF No. 95-1 at 1120-21). Defendant Schmuggerow informed Plaintiff of this decision during an October 29, 2014 examination. (ECF No. 92-1 at PageID.766; ECF No. 95-1 at 1127). Defendant Schmuggerow did not treat Plaintiff after this date. (ECF No. 92-1 at PageID.766).

### B.   Defendants Schmuggerow, Willard, Deeren, and Schooley

Plaintiff alleges that Defendants conspired to deny him medical treatment and deprive him of his preferred special diet. Defendants move for summary judgment and Plaintiff moves for partial summary judgment as to his Eighth Amendment claims. The evidence submitted by Defendants, detailed above, reveals that Plaintiff received regular and extensive medical treatment. As for the decision not to provide Plaintiff with his special dietary requests, the evidence shows that Defendants reasonably deferred to the determination of Dr. Ahamd, the medical specialist to whom Plaintiff was referred for treatment. Defendants Schmuggerow, Willard, and Deeren also reasonably concluded that the meal offerings available to Plaintiff were appropriate in light of his medical status.

12

As the evidence clearly reveals, Plaintiff simply disagrees with the treatment he received or considers such negligent, neither of which suffices to maintain a claim under the Eighth Amendment. While Plaintiff may subjectively believe that the diet he was provided was inappropriate to meet his medical needs, he has no evidence demonstrating such. In sum, Defendants have demonstrated that there does not exist any genuine factual dispute with respect to Plaintiff's Eighth Amendment claims. Specifically, Defendants have presented evidence demonstrating that they acted reasonably and did not disregard any known risk to Plaintiff's health or safety. Plaintiff has presented no evidence which supports a contrary finding. Accordingly, the undersigned recommends that Plaintiff's motion for partial summary judgment be denied and the motions for summary judgment asserted by Defendants Schmuggerow, Willard, Deeren, and Schooley be granted.

### C.     Defendant Corizon Health Services

Corizon is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). To impose liability against Corizon, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a Corizon policy or custom. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Plaintiff can demonstrate the existence of such a policy or custom in one of several ways: (1) prove the existence of an illegal official policy; (2) establish that an official with final decision making authority ratified illegal actions; (3) demonstrate that there existed a policy of inadequate training or supervision; or (4) establish that there existed a custom of tolerance or acquiescence of federal rights violations. *Ibid*.

As discussed above, Plaintiff's Eighth Amendment rights were not violated in this matter. Moreover, even if Plaintiff's rights had been violated, Plaintiff has presented no evidence which would

satisfy any of these requirements. Accordingly, the undersigned recommends that Plaintiff's motion for partial summary judgment be denied and Defendant Corizon's motion for summary judgment be granted.

## II.        Retaliation

Plaintiff has been permitted to proceed as a pauper in this matter. Pursuant to federal law, "[n]otwithstanding any filing fee, or portion thereof, that may have been paid" by a litigant pauper, "the court *shall* dismiss the case *at any time* if the court determines that. . .the action. . .fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added).

A claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The Court need not accept as true, however, factual allegations which are "clearly irrational or wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

As the Supreme Court more recently held, to avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to

dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

Plaintiff alleges in his complaint that Defendants subjected him to unlawful retaliation in violation of his First Amendment rights.   Plaintiff's retaliation claims, however, are not clearly articulated. Specifically, Plaintiff alleges that "Defendant Willard encouraged Defendant Deeren to cancel the diet order. . .in retaliation on Defendant Deeren's part for plaintiff filing past grievances against him."   (ECF No. 1 at PageID.13).

The elements of a First Amendment retaliation claim are well known.   The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct.   See *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).   Plaintiff's meager allegations are insufficient to satisfy the first and third elements.

Plaintiff alleges that he was retaliated against for filing a grievance.   Filing a grievance is protected conduct, but only if the grievance is not frivolous.   See, e.g., *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (the First Amendment does not afford prisoners the right to file frivolous grievances).   In this context, a grievance is frivolous if it alleges conduct which fails to state a claim upon which relief may be granted.   *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (a prisoner's act of filing a grievance constitutes protected conduct "only to the extent that the underlying

15

claims ha[ve] merit"); *Dykes v. Marshall*, 2016 WL 1059618 at *4 (W.D. Mich., Mar. 17, 2016) ("a grievance is frivolous, and thus not considered protected activity, 'if it complains of conduct that is not legally actionable'"). By failing to describe in any way the grievance which allegedly prompted the unlawful retaliation herein alleged, Plaintiff has failed to allege that he was engaged in protected conduct.

Plaintiff's allegations are likewise insufficient to allege the requisite causal connection. With respect to causation, courts recognize that retaliation is easy to allege and "is often very difficult to prove with direct evidence." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted). Conclusory allegations of retaliatory motive are insufficient, however. *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004). Instead, Plaintiff must, at a minimum, allege a chronology of events from which retaliation can plausibly be inferred. *See Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004). By failing to allege when he filed the aforementioned grievance, Plaintiff has failed to allege a chronology from which retaliation can plausibly be inferred.[2] Accordingly, the undersigned recommends that Plaintiff's retaliation claims be dismissed for failure to state a claim.

---

[2] In his Motion for Partial Summary Judgment, Plaintiff makes reference to retaliation allegedly committed by Physician's Assistant Kim Farris. (ECF No. 118 at PageID.1509-10). Plaintiff has also submitted evidence in support of this allegation. (ECF No. 118-1 at PageID.1514). Plaintiff's complaint, however, makes no mention of Kim Farris or her alleged retaliatory acts. Thus, this particular pleading does not alter the Court's analysis regarding the retaliation claims asserted in Plaintiff's complaint.

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 88), be **granted**; Defendants' Motion for Summary Judgment, (ECF No. 92), be **granted**; Plaintiff's Motion for Partial Summary Judgment, (ECF No. 118), be **denied**; and this matter **terminated**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: March 7, 2018          /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge